IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **KORETTA HARRIS** | * | |
| | * | |
| v. | * | Civil Case No. MJG-15-3859 |
| | * | |
| **COMMISSIONER, SOCIAL SECURITY** | * | |
| | * | |

************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' cross-motions for summary judgment. [ECF Nos. 18, 19]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). For the reasons set forth below, I recommend that Ms. Harris's motion be denied, that the Commissioner's motion be granted, and that the Commissioner's judgment be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Ms. Harris filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on October 13, 2011, alleging that her disability began on June 21, 2011. (Tr. 227-30, 231-36). Her applications were denied initially on March 12, 2012, and on

reconsideration on July 23, 2012.  (Tr. 140-44, 151-54).  An Administrative Law Judge ("ALJ") held a hearing on April 3, 2014, at which Ms. Harris testified and was represented by counsel.  (Tr. 33-81).  Following the hearing, the ALJ determined that Ms. Harris was not disabled within the meaning of the Social Security Act during the relevant time frame.  (Tr. 10-32).  The Appeals Council denied Ms. Harris's request for review, (Tr. 1-7), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Ms. Harris suffered from the severe impairments of obesity; hypertension; coronary artery disease (CAD); status-post myocardial infarction (MI); status-post cardiac stent placement; diabetes; keratoconus; astigmatism; major depressive disorder; anxiety disorder; and bipolar disorder.  (Tr. 15).  Despite these impairments, the ALJ determined that Ms. Harris retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can only occasionally operate foot controls; can only occasionally climb stairs and ramps, balance, stoop, knee, crouch and crawl; and never climb ladders, ropes or scaffolds. Further, [Ms. Harris] would need to avoid concentrated exposure to extreme cold as well as concentrated exposure to extreme heat, as well as concentrated exposure to excessive vibration, as well as concentrated exposure to hazardous moving machinery and unprotected heights. She is limited to occupations requiring only frequent near acuity, far acuity and depth perception. She also can only perform simple, routine, repetitive tasks in a low stress environment defined as one with no strict production quotas. Finally, Claimant can only occasionally interact with the public, coworkers and supervisors.

(Tr. 18).  After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Harris could perform jobs existing in significant numbers in the national economy and that, therefore, she was not disabled.  (Tr. 23).

Ms. Harris disagrees.  She raises two primary arguments in support of her appeal: (1) that the ALJ assigned insufficient weight to the opinions of her treating physicians; and (2) that the

ALJ, as a result, presented an incomplete hypothetical to the VE.[1]  Each of Ms. Harris's arguments lacks merit and is addressed below.

First, Ms. Harris argues that the ALJ assigned insufficient weight to the opinions of her treating physicians.  Pl. Mot. 9-11.  A treating physician's opinion is given controlling weight when two conditions are met: 1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques; and 2) it is consistent with other substantial evidence in the record.  *See Craig*, 76 F.3d 585; *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  However, where a treating source's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight.  *Craig*, 76 F.3d at 590.  If the ALJ does not give a treating source's opinion controlling weight, the ALJ will assign weight after applying several factors, such as, the length and nature of the treatment relationship, the degree to which the opinion is supported by the record as a whole, and any other factors that support or contradict the opinion.  20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).  The Commissioner must also consider, and is entitled to rely on, opinions from non-treating doctors.  *See* SSR 96-6p, at *3 ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

In the instant case, the ALJ assigned the opinion of Dr. Warren Israel, Ms. Harris's treating cardiologist, "modest weight" because it was not supported by clinical evidence and was inconsistent with the medical record.  (Tr. 21-22).  Notably, Dr. Israel opined that Ms. Harris was "limited to lifting five pounds occasionally, sitting for eight hours and standing and walking for

---

[1] I note that the ALJ in this case found a moderate limitation in concentration, persistence, or pace, and expressly limited Ms. Harris to a "low stress environment defined as one with no strict production quotas."  (Tr. 18).  This Court has held that such a limitation is adequate under the dictates of *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015).  *See Davis v. Comm'r, Soc. Sec. Admin.*, 2016 WL 3814929, at *2 (D. Md. July 12, 2016); *Raeke v. Comm'r, Soc. Sec.*, 2016 WL 892856, at *3 (D. Md. Mar. 9, 2016).

zero hours in an eight-hour period." (Tr. 22, 552). Dr. Israel further stated that Ms. Harris demonstrated a "marked limitation of activity," was required to "elevate her legs," and "would miss more than four days a month" due to her limitations. (Tr. 21, 22). The ALJ found, however, that Dr. Israel's opinion was inconsistent with the objective medical record and unsupported by clinical evidence. (Tr. 21-22). For example, the ALJ noted that Dr. Israel "does not refer to possible motor findings in the evidence of record to support his lifting limitation," and failed to "cite any clinical evidence to support the standing and walking limitation[.]" (Tr. 22). In addition, the ALJ noted that the finding of a marked limitation of activity was "inconsistent with the claimant's LVEF," while the leg elevation requirement was unsubstantiated by clinical support and contradicted by Ms. Harris's "concession that she can walk continuously for 15 minutes and jump rope up to 10 minutes." (Tr. 21). Accordingly, the ALJ properly evaluated Dr. Israel's medical opinion and supported his assignment of weight with substantial evidence.

The ALJ found Dr. Elosha Dixon's opinion similarly deficient and assigned it "no weight." (Tr. 22). Dr. Dixon, Ms. Harris's primary care physician, opined that she "was limited to never standing/walking, and lifting less than 10 pounds[.]" (Tr. 22). As noted above, the objective medical evidence, as well as Ms. Harris's own admissions, point to the contrary. (Tr. 22, 476, 547). Indeed, the ALJ noted that Ms. Harris "has no difficulty with ambulation and aside from finding obesity and an elevated blood pressure, Dr. Dixon's physical examinations of [Ms. Harris] were normal." (Tr. 22, 501-14). Moreover, the ALJ found that Dr. Dixon's opinion was also inconsistent with other opinion evidence. For example, the ALJ assigned substantial weight to the opinion of examining physician, Dr. Joyce Evans, who "opined that three years post MI did not translate to a condition where [Ms. Harris] would be disabled from any work[.]"

(Tr. 22, 540-44). The ALJ also assigned moderate weight to the State medical consultants, who "assessed, in 2012, that [Ms. Harris] [was] capable of light exertional work." These inconsistencies, in addition to the objective medical record and other opinion evidence, provide sufficient justification for the ALJ's assignment of weight to Dr. Dixon's opinion.

Ms. Harris further argues that the ALJ failed to consider the factors outlined in 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(1)-(6), when assigning weight to the medical opinion evidence. The regulations require an ALJ to assess several factors when determining what weight to assign to the medical opinions presented. 20 CFR 404.1527(d), 416.927(d). These factors include: the examining relationship between the physician and the claimant; the treatment relationship between the physician and the claimant; the specialization of the physician; the consistency of a medical opinion with the record as a whole; and the extent to which a medical opinion is supported by evidence. 20 CFR §§ 404.1527(d)(1)-(5), 416.927(d)(1)-(5). Upon review of the record, I find that the ALJ's analysis was proper under the regulations. For example, the ALJ acknowledged that Dr. Israel was Ms. Harris's treating physician and had examined Mr. Harris on multiple occasions between 2011 and 2012. (Tr. 21-22). The ALJ also adduced Dr. Israel's opinion and cited his medical records, which contain Dr. Israel's original notes and denote his cardiac specialization. (Tr. 21-22, 320-51). The ALJ then held that Dr. Israel's opinion was inconsistent with the objective medical record and unsupported by clinical evidence. (Tr. 21-22). The ALJ performed similar analyses for Ms. Harris's other treating, examining, and consultative physicians. (Tr. 21-23). Considering the entirety of the ALJ's RFC analysis, I find that the ALJ properly applied the regulations in assigning weight to the medical opinion evidence, and that his findings are supported by substantial evidence. Therefore, remand is unwarranted.

Second, Ms. Harris contends that the ALJ erred in disregarding testimony by the VE that she was not eligible for jobs existing in the national economy because of her limitations. As an initial matter, an ALJ is afforded "great latitude in posing hypothetical questions," *Koonce v. Apfel*, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999), and need only pose those that are based on substantial evidence and accurately reflect a claimant's limitations. *See Copeland v. Bowen*, 861 F.2d 536, 540-41 (9th Cir. 1988). Likewise, a hypothetical question is unimpeachable if it adequately reflects the RFC for which the ALJ had sufficient evidence. *See Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005).

In this case, the ALJ framed a hypothetical based on the RFC. In response, the VE stated that Ms. Harris could perform several jobs existing in the national economy. (Tr. 23, 71-72). Following the ALJ's inquiry, Ms. Harris's attorney altered the hypothetical to include a variety of other diagnoses, including limited vision, morbid obesity, anxiety, bipolar disorder, and mild limitations in activities of daily living, as well as a requirement that the hypothetical person be absent from work four days a month. (Tr. 75). In response to this hypothetical, the VE testified that such an individual "would be inconsistent with competitive employment." (Tr. 75-76). Critically, because Ms. Harris's attorney included impairments for which the ALJ did not find sufficient evidence, the ALJ was under no obligation to credit the second hypothetical or adhere to the VE's answer. Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 404 (1971). Even if there is other evidence that may support Ms. Harris's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See*

*Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Applying those standards, I conclude that the ALJ's hypothetical was proper, and remand is not required.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT Defendant's Motion for Summary Judgment [ECF No. 19];

2. the Court DENY Plaintiff's Motion for Summary Judgment [ECF No. 18];

3. the Court AFFIRM the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g); and

4. the Court close this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated: September 9, 2016         /s/

Stephanie A. Gallagher

United States Magistrate Judge